**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────────

**No. 20-2021**

───────────────

K & R CONTRACTORS, LLC,

        Petitioner,

     v.

MICHAEL KEENE; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

        Respondents.

----------------------

PRATIK A. SHAH,

        Court-Assigned Amicus Counsel.

───────────────

On Petition for Review of an Order of the Benefits Review Board.  (19-0242 BLA)

───────────────

Argued:  October 29, 2021                     Decided:  November 7, 2023

───────────────

Before HARRIS, QUATTLEBAUM, and RUSHING, Circuit Judges.

───────────────

Petition for review denied by published opinion.  Judge Rushing wrote the opinion, in which Judge Harris and Judge Quattlebaum joined.

───────────────

**ARGUED:**  Charity Ann Barger, STREET LAW FIRM, LLP, Grundy, Virginia, for Petitioner.  Amanda Lee Mundell, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent Director, Office of Workers' Compensation Programs.

Brad Anthony Austin, WOLFE WILLIAMS & REYNOLDS, Norton, Virginia, for Respondent Michael Keene. **ON BRIEF:** Thomas R. Scott, Jr., STREET LAW FIRM, LLP, Grundy, Virginia, for Petitioner. Elena S. Goldstein, Deputy Solicitor of Labor, Barry H. Joyner, Associate Solicitor, Jennifer L. Feldman, Deputy Associate Solicitor, Gary K. Stearman, Counsel for Appellate Litigation, Cynthia Liao, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Federal Respondent. Pratik A. Shah, Z.W. Julius Chen, Juliana C. DeVries, AKIN GUMP STRAUSS HAUER & FELD LLP, Washington, D.C., for Court-Appointed Amicus Counsel.

_____

RUSHING, Circuit Judge:

An administrative law judge (ALJ) working for the United States Department of Labor (DOL) ordered K & R Contractors, LLC to pay living miner's benefits to its former employee Michael Keene pursuant to the Black Lung Benefits Act. The Benefits Review Board affirmed, and K & R petitions this Court for review. K & R does not contest the evidence supporting the benefits award but instead challenges the constitutional authority of the two DOL ALJs who heard and decided Keene's claim against K & R. First, K & R contends that the ALJs were not appointed consistent with the Appointments Clause of the Constitution. Second, K & R asserts that the ALJs are insulated from removal by two layers of good-cause tenure protection, contrary to the Constitution's vesting of the executive power in the President.

The Director of the Office of Workers' Compensation Programs at DOL filed a brief on behalf of the Government arguing that, to save the ALJ removal scheme from constitutional infirmity, we must impose a novel narrowing construction on one of the applicable layers of protection, *see* 5 U.S.C. § 7521. No party took the position that the removal protections were constitutional without adopting a limiting construction. Therefore, to ensure full consideration of the removal issue, after oral argument we appointed an amicus curiae to defend the constitutionality of the dual good-cause removal provisions without the Government's proposed narrowing construction.[1] We then received further briefing from the parties in response to the amicus brief.

---

[1] We thank appointed amicus curiae Pratik A. Shah and his colleagues for their assistance to the Court.

3

Having now fully considered the merits of the issues presented, we hold that both ALJs were constitutionally appointed and that, even if the dual good-cause removal protections were unconstitutional, K & R is not entitled to relief because it has not identified any harm resulting from those removal provisions. We therefore deny the petition for review.

I.

Before we discuss the facts of this case, some statutory background is necessary.

A.

We begin by describing adjudications under the Black Lung Benefits Act, 30 U.S.C. §§ 901–944, which "provides benefits to 'coal miners who are totally disabled due to pneumoconiosis,' commonly known as black lung disease," *W. Va. CWP Fund v. Dir., Off. of Workers' Comp. Programs*, 880 F.3d 691, 694 (4th Cir. 2018) (quoting 30 U.S.C. § 901(a)). A disabled coal miner or his surviving dependent initiates the process by filing a claim with a DOL district director. *See* 20 C.F.R. §§ 725.301, 725.303, 725.401. The district director develops the record and identifies, if available, a coal mine operator who may be held responsible for paying benefits to the claimant. *See* 20 C.F.R. §§ 725.401– 725.418. At the end of those proceedings, the district director issues a proposed order. 20 C.F.R. § 725.418.

Any party then may request a hearing before a DOL ALJ. 20 C.F.R. §§ 725.419, 725.421, 725.451. With some exceptions, these hearings are conducted in accordance with the Administrative Procedure Act. *See* 33 U.S.C. § 919(d) ("[A]ny hearing held under this chapter shall be conducted in accordance with the provisions of section 554 of Title 5.");

30 U.S.C. § 932(a) (incorporating procedures of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950, into the Black Lung Benefits Act); 20 C.F.R. § 725.452(a) ("Except as otherwise provided by this part, all hearings shall be conducted in accordance with the provisions of 5 U.S.C. 554 et seq."). The ALJ takes evidence and resolves contested questions of fact and law. *See* 5 U.S.C. § 556(c); 20 C.F.R. § 725.455. If no party appeals, the ALJ's decision is final. *See* 5 U.S.C. § 557(b); 20 C.F.R. § 725.479.

Any party dissatisfied with the ALJ's ruling may appeal to the Benefits Review Board. *See* 33 U.S.C. § 921(b); 20 C.F.R. § 725.481. In addition, "[t]he Board may, on its own motion or at the request of the Secretary [of Labor], remand a case to the [ALJ] for further appropriate action." 33 U.S.C. § 921(b)(4). The Board's decisions are subject to judicial review in the court of appeals for the circuit in which the claimant's injury occurred. *See* 33 U.S.C. § 921(c); 20 C.F.R. § 725.482(a).

## B.

This appeal concerns the hiring and firing of DOL ALJs, so we describe that process next. Before 2018, DOL ALJs were hired through the competitive service. *See* 5 U.S.C. § 2102; 5 C.F.R. § 930.201(b). The Office of Personnel Management conducted a competitive application and ranking process to identify entry-level candidates, then DOL staff would select from among the finalists. DOL could also arrange for an experienced ALJ to transfer from another agency. *See* 5 C.F.R. § 930.204(h).

In 2018, the Supreme Court held that Securities and Exchange Commission ALJs are "Officers of the United States" within the meaning of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, and so can be appointed only by the President, a court of law, or a

head of department. *Lucia v. SEC*, 138 S. Ct. 2044, 2049 (2018). In response, President Trump issued an executive order exempting ALJs from the competitive hiring process and charging each agency with hiring its own ALJs. Exec. Order No. 13,843, 83 Fed. Reg. 32,755, 32,756 (July 10, 2018). The executive order also specified that incumbent ALJs would "remain in the competitive service as long as they remain in their current positions." *Id.* at 32,757; *see* 5 C.F.R. § 6.8(d).

The Secretary of Labor can remove an ALJ from office "only for good cause established and determined by the Merit Systems Protection Board [MSPB] on the record after opportunity for hearing before the Board." 5 U.S.C. § 7521(a). The MSPB exercises original, not appellate, jurisdiction over proposed agency actions against ALJs. 5 C.F.R. § 1201.121(a). In other words, it is the MSPB who "determin[es] whether good cause exists to take the agency's requested action," *Dep't of Health & Hum. Servs. v. Jarboe*, 2023 M.S.P.B. 22, ¶ 10 (Aug. 2, 2023), and "authorizes the employing agency to remove" the ALJ or impose some lesser sanction, *id.* at ¶ 6 (citing *Soc. Sec. Admin. v. Levinson*, 2023 M.S.P.B. 20, ¶¶ 37–38 (July 12, 2023)); *see* 5 C.F.R. § 1201.140(b) (MSPB "will specify the penalty to be imposed"). Members of the MSPB can be removed from office "by the President only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

## C.

We now turn to the facts underlying this dispute. Claimant Michael Keene worked in coal mines for more than 34 years, the last three of which he worked for K & R. After years of coal dust exposure, Keene developed breathing problems and eventually was

diagnosed with pneumoconiosis. In February 2017, Keene filed a claim for benefits under the Black Lung Benefits Act. The district director issued a proposed decision awarding Keene benefits and designating K & R as the responsible operator. K & R requested a hearing before an ALJ, and the matter was referred to the Office of Administrative Law Judges.

Around the same time, DOL's Chief ALJ recommended to the Secretary of Labor that he ratify the appointments of incumbent DOL ALJs in view of the *Lucia* case then pending before the Supreme Court. *See* Mem. from Hon. Stephen R. Henley, Chief ALJ, to Sec'y of Labor (Dec. 20, 2017).[2] The Secretary adopted the recommendation and issued letters ratifying the appointments of incumbent DOL ALJs, who had been hired through the competitive service. One of the ALJs the Secretary ratified was the ALJ eventually assigned to hear Keene's claim, ALJ William Barto. The Secretary's letter to ALJ Barto stated:

> In my capacity as head of the Department of Labor, and after due consideration, I hereby ratify the Department's prior appointment of you as an Administrative Law Judge. This letter is intended to address any claim that administrative proceedings pending before, or presided over by, administrative law judges of the U.S. Department of Labor violate the Appointments Clause of the U.S. Constitution. This action is effective immediately.

---

[2] *Available at* https://www.dol.gov/sites/dolgov/files/OALJ/PUBLIC/FOIA/Frequently_Requested_Records/ALJ_Appointments/Memorandum_on_Ratification_of_Appointment_of_USDOL_ALJs_(Dec_20_2017).pdf [https://perma.cc/WC4D-VBXB].

Letter from R. Alexander Acosta, Sec'y of Labor, to Hon. William T. Barto, ALJ (Dec. 21, 2017).[3]

Several weeks later, the Keene matter was transmitted to ALJ Barto.  K & R moved to reassign the claim to a different ALJ, arguing that ALJ Barto had not been constitutionally appointed and that the two levels of ALJ removal protection violate the Constitution.  At a hearing in August 2018, ALJ Barto denied the motion, noting that the Secretary had ratified his appointment before he took any substantive action in the case.

In January 2019, for reasons unrelated to this case, the Keene matter was transferred from ALJ Barto to ALJ Francine Applewhite.  The Secretary of Labor had accepted ALJ Applewhite's request for a transfer from the Social Security Administration and appointed her to a DOL ALJ position effective October 28, 2018.  The Secretary's letter to ALJ Applewhite stated:

> Pursuant to my authority as Secretary of Labor, I hereby appoint you as an Administrative Law Judge in the U.S. Department of Labor, authorized to execute and fulfill the duties of that office according to law and regulation and to hold all the powers and privileges pertaining to that office.  U.S. Const. art. II, § 2, cl. 2; 5 U.S.C. § 3105.  This action is effective upon transfer to the U.S. Department of Labor.

Letter from R. Alexander Acosta, Sec'y of Labor, to Francine L. Applewhite, ALJ (Sept. 12, 2018).[4]

---

[3] *Available at* https://www.dol.gov/sites/dolgov/files/OALJ/PUBLIC/FOIA/ Frequently_Requested_Records/ALJ_Appointments/Secretarys_Ratification_of_ALJ_ Appointments_12_21_2017.pdf [https://perma.cc/UAW7-PL74].

[4] *Available at* https://www.dol.gov/sites/dolgov/files/OALJ/PUBLIC/FOIA/ Frequently_Requested_Records/ALJ_Appointments/Appointment_Letters_Alford_thru_ Wang_09_12_2018_posted_Redacted.pdf [https://perma.cc/FD65-DQMS].

After the transfer, K & R again objected that DOL ALJ "appointments and removal protections" were unconstitutional, this time taking issue with incumbent ALJs' retention of competitive service status. J.A. 19. ALJ Applewhite rejected K & R's Appointments Clause challenge, reasoning that she had been "appointed by the Secretary of Labor on October 28, 2018," before taking any action in the case. J.A. 25. ALJ Applewhite found that Keene was entitled to benefits under the Act, designated K & R as the responsible operator, and ordered K & R to begin paying benefits.

K & R appealed to the Benefits Review Board, asserting two grounds for vacatur. First, K & R reiterated its claim that neither ALJ Barto nor ALJ Applewhite had been constitutionally appointed. Second, K & R argued that "the ALJ[s] lacked the authority to adjudicate this case because the limitations on their removal violate the separation of powers." J.A. 61. In support of its removal argument, K & R described the Supreme Court's decision in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), and quoted Justice Breyer's concurrence in *Lucia*, where he opined that "'Congress seems to have provided administrative law judges with two levels of protection from removal without cause—just what *Free Enterprise Fund* interpreted the Constitution to forbid in the case of the [PCAOB] members.'" J.A. 62 (quoting *Lucia*, 138 S. Ct. at 2060 (Breyer, J., concurring)). According to K & R, insulating ALJs "from removal by the Secretary at will" contravened "the separation of powers principle." J.A. 62.

Keene did not respond to K & R's appeal, but the Government did. The Director of the Office of Workers' Compensation Programs filed a brief responding to both of K &

9

R's constitutional arguments on the merits. *See* 20 C.F.R. § 725.482(b) ("The Director, Office of Workers' Compensation Program[s], . . . shall be considered the proper party to appear and present argument on behalf of the Secretary of Labor in all review proceedings conducted pursuant to . . . the Act . . . .").

The Benefits Review Board affirmed ALJ Applewhite's order. The Board rejected K & R's Appointments Clause challenge, reasoning that ALJ Applewhite had been validly appointed by the Secretary of Labor before she was assigned this case and the Secretary's ratification of ALJ Barto's appointment cured any constitutional defect in his hiring. Regarding the constitutionality of the ALJs' removal protections, the Board "decline[d] to address the issue" because K & R "failed to adequately brief" it. J.A. 89–90. The Board nevertheless addressed the issue in a lengthy footnote, distinguishing *Free Enterprise Fund* and *Lucia* on the ground that neither decision explicitly decided whether the removal protections for ALJs were unconstitutional. Subsequently, the Board denied K & R's motion for reconsideration.

K & R petitioned this Court for review, challenging the constitutionality of both the ALJ appointments and the ALJ removal protections. We have jurisdiction, 33 U.S.C. § 921(c), and review these legal questions de novo, *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000).

## II.

The Appointments Clause prescribes the exclusive means of appointing "Officers of the United States," a "class of government officials distinct from mere employees." *Lucia*, 138 S. Ct. at 2049. Only the President, with the advice and consent of the Senate,

10

can appoint "'principal' officers," *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1979 (2021) (quoting *Edmond v. United States*, 520 U.S. 651, 659 (1997)), while Congress may vest the appointment of "inferior Officers" in "the President alone, in the Courts of Law, or in the Heads of Departments," U.S. Const. art. II, § 2, cl. 2.

The parties agree that DOL ALJs are inferior officers in light of the Supreme Court's decision in *Lucia*. Like the SEC ALJs in *Lucia*, DOL ALJs "hold a continuing office established by law," exercise "significant discretion" when carrying out "important functions" on behalf of the executive branch, and "issue decisions" that can become the "last[]word" in agency proceedings. *Lucia*, 138 S. Ct. at 2053–2054 (internal quotation marks omitted); *see also Carr v. Saul*, 141 S. Ct. 1352, 1357 (2021). DOL ALJs, like their SEC counterparts, conduct trial-like hearings, receive evidence, examine witnesses, issue subpoenas, rule on procedural and dispositive motions, and render decisions. *See Lucia*, 138 S. Ct. at 2053 (citing *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 881–882 (1991)); 20 C.F.R. §§ 725.351(b), 725.452–725.476. Recognizing these similarities among ALJs, courts have extended *Lucia* "to ALJs in other executive department federal agencies." *Brooks v. Kijakazi*, 60 F.4th 735, 740 (4th Cir. 2023) (SSA ALJs); *see*, *e.g.*, *Calcutt v. FDIC*, 37 F.4th 293, 320 (6th Cir. 2022) (FDIC ALJs), *rev'd on other grounds*, 143 S. Ct. 1317 (2023); *Fleming v. U.S. Dep't of Agric.*, 987 F.3d 1093, 1103 (D.C. Cir. 2021) (USDA ALJs); *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 679 (6th Cir. 2018) (Fed. Mine Safety & Health Rev. Comm'n ALJs).

Congress can vest the appointment of inferior officers like DOL ALJs in the "Heads of Departments"—here, the Secretary of Labor. U.S. Const. art. II, § 2, cl. 2; *see* 29 U.S.C.

11

§ 551 (establishing the "Secretary of Labor" as the "head" of "the Department of Labor"); 5 U.S.C. § 3105 ("Each agency shall appoint as many administrative law judges as are necessary for proceedings[.]").  Consistent with that authority, the Secretary of Labor appointed both DOL ALJs who presided over this case.  In September 2018, the Secretary appointed ALJ Applewhite as a DOL ALJ, effective upon her transfer to DOL in October 2018, months before she was assigned the Keene matter.  And the Secretary ratified DOL's prior appointment of ALJ Barto in December 2017, before he took any action in the Keene case.  We decline K & R's invitation to look behind the individual appointment letters signed by the Secretary to inquire into his deliberative process.  The letters are "conclusive evidence that the appointment[s] [were] made," *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 158 (1803), and the Secretary's lawful exercise of his appointment authority resolves the constitutional question.

K & R nevertheless contends that the Secretary's actions were ineffective because both ALJs were originally appointed through the competitive service and allegedly remain in the competitive service.  As an initial matter, we reject K & R's assertion that ratification by a department head cannot prospectively cure a prior unconstitutional appointment.  Courts have recognized that, in some circumstances, a department head can by ratification remedy defects in agency action initially taken without lawful authority.  *See, e.g., Decker Coal Co. v. Pehringer*, 8 F.4th 1123, 1127 n.1 (9th Cir. 2021); *Wilkes-Barre Hosp. Co. v. NLRB*, 857 F.3d 364, 371 (D.C. Cir. 2017); *cf. Edmond*, 520 U.S. at 654–655, 666 (concluding that the ratified appointments in that case were valid).  Here, the Secretary's express ratification of ALJ Barto's appointment cured any constitutional defect in his

12

original hiring by DOL. And ratification wasn't necessary for ALJ Applewhite, because the Secretary himself appointed her as a DOL ALJ in the first instance. Her prior employment as an ALJ in another executive agency is irrelevant. Both ALJs, therefore, had been constitutionally appointed by the time they took any action in this case.

We likewise reject K & R's unsupported contention that retaining incumbent ALJs in the competitive service after their valid appointment poses an Appointments Clause problem. Whether these ALJs remained in the competitive service *after* the Secretary appointed them is neither here nor there; because they were appointed in accordance with the Constitution before they took action in this case, K & R's Appointments Clause challenges fail.

## III.

We next consider K & R's objection that the DOL ALJs are unconstitutionally insulated from the President's removal authority. Before proceeding to the merits, we must first address the threshold question of exhaustion.

## A.

By regulation, issue exhaustion is required in an administrative appeal to the Benefits Review Board. *Edd Potter Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 39 F.4th 202, 209 (4th Cir. 2022); *see* 20 C.F.R. § 802.211(a). A party must "list[] the specific issues to be considered on appeal" and "present[] . . . an argument with respect to each issue" in order to preserve them for the Board's review. 20 C.F.R. § 802.211(a), (b). Failure to raise an issue at the appropriate time results in forfeiture. *Edd Potter Coal*, 39

13

F.4th at 206.  Here, the Board concluded that K & R had forfeited its challenge to the ALJ removal provisions by failing to adequately brief the issue.

Courts reviewing agency action "regularly ensure against the bypassing of" regulatory issue exhaustion requirements "by refusing to consider unexhausted issues." *Sims v. Apfel*, 530 U.S. 103, 108 (2000).  But a party's "failure to preserve arguments by waiving [or forfeiting] them in the administrative forum is not a jurisdictional bar to our review."[5] *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 225 n.5 (4th Cir. 2009).  And because the issue exhaustion requirement is not jurisdictional, "it may be waived or forfeited" by the opposing party.  *United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021); *see Fleming*, 987 F.3d at 1099 ("[A] nonjurisdictional, mandatory exhaustion requirement functions as an affirmative defense, and thus can be waived or forfeited by the government's failure to raise it.").

The Director has waived K & R's forfeiture and has instead urged us to resolve the constitutional question on the merits.  In their briefs, neither the Director nor Keene raise issue exhaustion or forfeiture as a ground for denying the petition.  When asked about the Government's position on forfeiture at oral argument, counsel for the Director confirmed, "We have not pressed that argument on appeal. . . .  [The removal issue is] a pure question

_____

[5] K & R did not waive this constitutional challenge.  *See United States v. Olano*, 507 U.S. 725, 733 (1993) ("[W]aiver is the intentional relinquishment or abandonment of a known right."  (internal quotation marks omitted)).  It identified the issue but failed to sufficiently brief it, which amounts to forfeiture.

14

of law that's certainly been briefed," and "it's an important issue that this Court can reach."[6] Oral Arg. at 29:42–29:54, 30:25.

The respondents' reluctance to rely on K & R's forfeiture before the Board as a ground to avoid judicial review of the removal issue is well founded, because its objection to the ALJ removal provisions is a facial constitutional challenge about which the Board has "no special expertise and for which [it] can provide no relief." *Carr*, 141 S. Ct. at 1361; *see McCarthy v. Madigan*, 503 U.S. 140, 147–148 (1992). The Supreme Court has recognized time and again that "agency adjudications are generally ill suited to address structural constitutional challenges, which usually fall outside the adjudicators' areas of technical expertise." *Carr*, 141 S. Ct. at 1360; *see Free Enter. Fund*, 561 U.S. at 491. What's more, the Board has no authority to remedy the alleged separation-of-powers violation. K & R seeks to invalidate the statutes governing removal of DOL ALJs. While each of the three branches of our federal government has an obligation to interpret the Constitution, only the judiciary possesses the power to enjoin enforcement of statutes inconsistent with the Constitution. *See Marbury*, 5 U.S. (1 Cranch) at 177–178.

---

[6] Reaching the merits of the removal-protections issue presents no *Chenery* problem, contrary to court-appointed amicus's suggestion. "[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency" and cannot "affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). The constitutionality of an act of Congress is not a judgment entrusted to DOL alone, nor is the alleged unconstitutionality of the ALJ removal provisions an alternative basis for affirming the Board's decision. *Cf. Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 905 (2023) ("Claims that tenure protections violate Article II . . . [are] detached from considerations of agency policy" and "distant from [agency] competence and expertise." (internal quotation marks omitted)).

Comparing K & R's two constitutional claims illustrates the point. Its Appointments Clause challenge contests "how the Department of Labor *applied* its statutory appointments power." *Edd Potter Coal*, 39 F.4th at 211 (internal quotation marks omitted). The Board can decide that claim and "grant the requested relief of reassignment to a different ALJ" who has been properly appointed by the Secretary, as it has done in numerous other black lung cases. *Id.* But what relief could the Board offer if it agreed with K & R that the relevant statutes unconstitutionally shield DOL ALJs from removal? The remedies granted by Article III courts, such as striking one layer of good-cause tenure protection from the statutory scheme, would be unavailable because an agency cannot invalidate a statute enacted by Congress to govern and restrain the agency. *See Calcutt*, 37 F.4th at 313; *Jones Bros.*, 898 F.3d at 673. Nor could the Board compel the MSPB, an independent executive branch agency, to construe its authority over ALJ removal in a manner to avoid the constitutional problem. In this circumstance, it would have been futile to bring the removal claim to the Board and "senseless for an Article III court to enforce forfeiture." *Jones Bros.*, 898 F.3d at 677; *see also Carr*, 141 S. Ct. at 1361 ("It makes little sense to require litigants to present claims to adjudicators who are powerless to grant the relief requested.").

Given the Director's waiver of any argument that K & R forfeited its removal-protections claim by failing to exhaust it, Keene's decision not to raise the issue, and the nature of the facial constitutional challenge K & R presses, we agree with the parties that we can and should consider K & R's objection to the DOL ALJ removal protections.

16

B.

Article II of the Constitution vests "[t]he executive Power" in "a President," who must "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 1, cl. 1; *id.* § 3. "Because no single person could fulfill that responsibility alone, the Framers expected that the President would rely on subordinate officers for assistance." *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020). And "[s]ince 1789, the Constitution has been understood to empower the President to keep these officers accountable—by removing them from office, if necessary." *Free Enter. Fund*, 561 U.S. at 483.

The Supreme Court has "recognized only two exceptions to the President's unrestricted removal power." *Seila Law*, 140 S. Ct. at 2192. First, Congress can "create expert agencies led by a *group* of principal officers removable by the President only for good cause." *Id.* (citing *Humphrey's Executor v. United States*, 295 U.S. 602 (1935)). Second, Congress can provide for-cause "tenure protections to certain *inferior* officers with narrowly defined duties." *Id.* (citing *United States v. Perkins*, 116 U.S. 483 (1886), and *Morrison v. Olson*, 487 U.S. 654 (1988)). If these inferior officers are appointed by "Heads of Departments," U.S. Const. art. II, § 2, cl. 2, then "it is ordinarily the department head, rather than the President, who enjoys the power of removal," *Free Enter. Fund*, 561 U.S. at 493.

In *Free Enterprise Fund*, the Supreme Court held that these "separate layers of protection" may not be combined. *Id.* at 483–484. Specifically, the Court held that the President may not be "restricted in his ability to remove a principal officer, who is in turn restricted in his ability to remove an inferior officer, even though that inferior officer

17

determines the policy and enforces the laws of the United States[.]" *Id.* at 484. "[S]uch multilevel protection from removal is contrary to Article II's vesting of the executive power in the President." *Id.* The removal mechanism at issue in *Free Enterprise Fund* insulated inferior officers from the President by two layers of for-cause tenure. Congress had provided that members of the Public Company Accounting Oversight Board could be removed only "'for good cause'" as determined by the Securities and Exchange Commission after notice and opportunity for a hearing.[7] *Id.* at 486 (quoting 15 U.S.C. § 7211(e)(6)). And members of the Commission could be removed by the President only for "inefficiency, neglect of duty, or malfeasance in office." *Id.* at 487 (internal quotation marks omitted). The Supreme Court held that "the dual for-cause limitations on the removal of Board members contravene[d] the Constitution's separation of powers." *Id.* at 492.

K & R contends that the same problem afflicts the removal restrictions Congress imposed for DOL ALJs. They also "exercise significant executive power" yet are insulated from the President by "two levels of protection from removal." *Id.* at 514. The Secretary of Labor can remove a DOL ALJ "only for good cause." 5 U.S.C. § 7521(a). But the statute withdraws from the Secretary—and therefore the President—the decision whether good cause exists. "That decision is vested instead in other tenured officers . . . none of

---

[7] More specifically, a "Board member [could not] be removed except for willful violations of the [Sarbanes-Oxley] Act, Board rules, or the securities laws; willful abuse of authority; or unreasonable failure to enforce compliance—as determined in a formal Commission order, rendered on the record and after notice and an opportunity for a hearing." *Id.* at 503 (citing 15 U.S.C. § 7217(d)(3)).

18

whom is subject to the President's direct control." *Free Enter. Fund*, 561 U.S. at 495. Only the MSPB can "establish[] and determine[]" whether good cause exists to remove a DOL ALJ. 5 U.S.C. § 7521(a). And the President can remove members of the MSPB "only for inefficiency, neglect of duty, or malfeasance in office." 5 U.S.C. § 1202(d).

The Supreme Court in *Free Enterprise Fund* foresaw the possibility that its holding would implicate the statutory removal protections for ALJs. *See* 561 U.S. at 507 n.10; *id.* at 542–543 (Breyer, J., dissenting). In a footnote, the Court declined to address "that subset of independent agency employees who serve as [ALJs]," but noted several potential distinctions: whether ALJs are "Officers of the United States" was disputed; unlike the PCAOB, many ALJs "perform adjudicative rather than enforcement or policymaking functions"; and some ALJs "possess purely recommendatory powers." *Id.* at 507 n.10.

K & R responds that the potential distinctions highlighted by the Court in *Free Enterprise Fund* do not distinguish DOL ALJs from the constitutional principles driving the Court's separation-of-powers holding. To begin with, eight years after *Free Enterprise Fund*, the Supreme Court held that SEC ALJs *are* inferior officers of the United States, because they exercise significant discretion when carrying out important executive functions. *See Lucia*, 138 S. Ct. at 2053. As explained above, DOL ALJs similarly are "inferior Officers" in an executive department, not employees of an independent agency. U.S. Const. art. II, § 2, cl. 2; *see* 29 U.S.C. § 551. Their decisions determining rights and responsibilities under federal law and imposing penalties to enforce the law are not mere recommendations but become final if no party appeals. *See* 20 C.F.R. §§ 725.479, 726.313. And although DOL ALJs perform adjudicative functions, their activities "'are exercises

of—indeed, under our constitutional structure they *must be* exercises of—the executive Power,' for which the President is ultimately responsible." *Arthrex*, 141 S. Ct. at 1982 (quoting *Arlington v. FCC*, 569 U.S. 290, 305 n.4 (2013)); *see also Seila Law*, 140 S. Ct. at 2198–2199 & n.2.

The Director adds that the Black Lung Benefits Act incorporates the procedures used in the Longshore and Harbor Workers' Compensation Act, *see* 30 U.S.C. § 932(a), a framework that *requires* the agency to use ALJ adjudicators, *see* 33 U.S.C. § 919(d) ("Any such hearing shall be conducted by a[n] administrative law judge qualified under section 3105 of [Title 5]."). Although Congress briefly authorized non-ALJ adjudicators to hear black lung claims, *see* 30 U.S.C. § 932a, the Director identifies what he calls a "sunset provision" in the statute, pursuant to which the Secretary's authority to appoint non-ALJ adjudicators in black lung cases expired in 1979, *see id.* Statutory Note ("Extension of Adjudication Period Through March 1, 1979"); *see also* Pub. L. No. 95-239, § 7(i), 92 Stat. 95, 100 (1978).[8] As a result, it may not be the case that DOL "has the choice whether to use ALJs for hearings" to determine black lung claims. *Free Enter. Fund v. PCAOB*, 537 F.3d 667, 699 n.8 (D.C. Cir. 2008) (Kavanaugh, J., dissenting). A statutory requirement to use ALJs, who Congress has insulated from the President's removal authority by two layers of for-cause tenure protection, brings the separation-of-powers question into sharp relief.

---

[8] The Director notes that the Ninth Circuit relied on 30 U.S.C. § 932a to conclude that "[n]o statute mandates that the DOL employ ALJs in adjudicating [black lung] benefits claims," without acknowledging the sunset provision. *Pehringer*, 8 F.4th at 1133.

The courts of appeals are divided about whether the dual for-cause limitations on the removal of ALJs—specifically, 5 U.S.C. § 7521 and § 1202(d)—are constitutional. The Ninth Circuit has upheld the constitutionality of the combined removal protections as applied to DOL ALJs.  *See Pehringer*, 8 F.4th at 1136; *see also Calcutt*, 37 F.4th at 319 (doubting, in dicta, whether these removal limitations are unconstitutional as applied to FDIC ALJs).  The Fifth Circuit, on the other hand, has held these removal restrictions unconstitutional in a case about SEC ALJs.  *See Jarkesy v. SEC*, 34 F.4th 446, 465 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 2688 (2023); *see also Fleming*, 987 F.3d at 1123 (Rao, J., dissenting in part) (concluding these removal limits are unconstitutional as applied to USDA ALJs).

"Notwithstanding this debate, it is 'a well-established principle governing the prudent exercise of this Court's jurisdiction that normally the Court will not decide a constitutional question if there is some other ground upon which to dispose of the case.'" *Bond v. United States*, 572 U.S. 844, 855 (2014) (quoting *Escambia Cnty. v. McMillan*, 466 U.S. 48, 51 (1984) (per curiam)); *see also Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring).  Here, regardless of how we answer the constitutional question presented by the removal provisions, we would be required to deny the petition because K & R has not asserted any harm resulting from the allegedly unconstitutional statutes, as explained below.  Consequently, we are constrained to avoid resolving that constitutional question in this case.

21

C.

The relief K & R seeks for the alleged constitutional violation is vacatur of the agency's decision and remand for new hearing before a different ALJ who is properly accountable to the President. *See Seila Law*, 140 S. Ct. at 2196 ("[W]hen [a removal] provision violates the separation of powers it inflicts a here-and-now injury on affected third parties that can be remedied by a court." (internal quotation marks omitted)). Unfortunately for K & R, the Supreme Court has recently clarified that vacatur is not automatically warranted when a court concludes that an executive branch decisionmaker was subject to unconstitutional removal restrictions. *See Collins v. Yellen*, 141 S. Ct. 1761, 1787–1789 (2021).

An executive officer who was properly appointed may lawfully exercise the power of his office. A constitutional defect in the procedure for removing that officer—unlike a defect in his appointment—is "no basis for concluding" that he "lacked the authority to carry out the functions of the office." *Id.* at 1788. As the Supreme Court explained in *Collins*, "the unlawfulness of the removal provision does not strip [the officer] of the power to undertake the other responsibilities of his office," which he lawfully fills. *Id.* at 1788 n.23. Rather, the actions of a lawfully appointed executive officer fulfilling the duties of his office are legitimate and enforceable, even if the President's authority to remove the officer was unconstitutionally limited during his tenure.

The Court nevertheless acknowledged the "possibility" that an unconstitutional removal provision could "inflict compensable harm." *Id.* at 1789. It gave two "clear-cut" examples: suppose "the President had attempted to remove [the officer] but was prevented

22

from doing so by a lower court decision holding that he did not have 'cause' for removal," or suppose "the President had made a public statement expressing displeasure with actions taken by [the officer] and had asserted that he would remove [him] if the statute did not stand in the way." *Id.* "In those situations," the Court explained, "the statutory [removal] provision would clearly cause harm." *Id.*

*Collins* instructs that a party who has successfully challenged an unconstitutional removal restriction is not entitled to have the underlying agency action set aside absent reason to believe that the unconstitutional removal provision itself inflicted harm. The courts of appeals have followed the Supreme Court's guidance and denied relief on removal claims when the challengers have not shown that the constitutional violation caused them harm. *See CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 179–181 (2d Cir. 2023); *Cmty. Fin. Servs. Assoc. of Am., Ltd. v. CFPB*, 51 F.4th 616, 631–633 (5th Cir. 2022), *cert. granted*, 143 S. Ct. 978 (2023); *Integrity Advance, LLC v. CFPB*, 48 F.4th 1161, 1170–1171 (10th Cir. 2022); *Calcutt*, 37 F.4th at 316–317; *Kaufmann v. Kijakazi*, 32 F.4th 843, 849–850 (9th Cir. 2022).

K & R has not asserted any possible harm resulting from the allegedly unconstitutional limitations on the President's ability to remove DOL ALJs. And nothing in the record suggests the Secretary of Labor attempted or desired to remove ALJ Applewhite or ALJ Barto. Therefore K & R is not entitled to vacatur of the Board's decision affirming ALJ Applewhite's order regardless of whether the removal protections for DOL ALJs are constitutional.

23

IV.

In sum, the Secretary of Labor properly appointed ALJ Applewhite and ratified the appointment of ALJ Barto consistent with their status as inferior officers of the United States under the Appointments Clause. The Secretary made these appointments before the ALJs took any action in the Keene matter, therefore the ALJs lawfully possessed the authority to adjudicate the case and render the decision holding K & R responsible for paying black lung benefits to Keene. Because the ALJs were exercising the lawful authority of their offices, and K & R does not claim that the allegedly unconstitutional removal provisions caused it any harm, K & R is not entitled to any relief on its removal protections claim. That is true even if we agreed with K & R that the dual for-cause limitations on removal unconstitutionally insulate DOL ALJs from the President's authority. Accordingly, we do not decide that constitutional question and deny K & R's petition for review.

*PETITION FOR REVIEW DENIED*